USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/21/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAILWARE, INC.,

Plaintiff,

-against-

NEW JERSEY TRANSIT CORPORATION,

Defendant.

24-CV-05537 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Railware, Inc. ("Railware") brings this action against Defendant New Jersey Transit Corporation ("NJT"), asserting that NJT's operation of its dispatch system infringes on three of Railware's patents. NJT has moved to transfer the venue of this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). Dkt. No. 51. For the reasons that follow, the motion is GRANTED and this case is TRANSFERRED to the District of New Jersey.

## BACKGROUND

### I. RELEVANT FACTS[1]

Railware, a New York company, sells Dispatch X, "one of the premier train traffic control systems in the world." Compl. ¶¶ 7, 15. A notable feature of Dispatch X is a patented safety technology known as the Enhanced Employee Protection System ("EEPS"). *Id.* ¶ 2. EEPS was created by Railware's owner Ross Pirtle to mitigate safety risks to railroad maintenance workers. *Id.* ¶¶ 5, 16. EEPS differentiates Dispatch X from other centralized railroad control systems in at least one key respect: rather than placing control over railroad

[1] All facts are taken from the Amended Complaint ("Compl." or "Complaint"), Dkt. No. 13, and assumed true for purposes of deciding the present motion.

tracks with a single dispatcher, it "requir[es] railway traffic controllers and employees on the ground to cooperate to lift a block [on a given section of track]." *Id.* ¶ 21.

Railware became the sole owner of two patents related to EEPS through assignment from Mr. Pirtle: U.S. Patent Number 9,517,782 (the "'782 Patent") and U.S. Patent Number 9,403,545 (the "'545 Patent"). *Id.* ¶ 5. Subsequently, Railware obtained U.S. Reissue Patents RE47,835 (the "'835 Patent") and RE49,115 (the "'115 Patent," and collectively with the other named patents, the "Asserted Patents"), both of which are reissues of the '545 Patent. *Id.* ¶¶ 5, 24. Each of the Asserted Patents is "directed to methods and systems for centralized railway control." *Id.* ¶¶ 25–27.

NJT is incorporated in the State of New Jersey and has its principal place of business in Newark, New Jersey. *Id.* ¶ 8. NJT operates a mass-transit system within New Jersey, as well as parts of New York and Pennsylvania, *id.*, maintaining more than 500 miles of track and providing close to 90 million passenger trips a year, *id.* ¶ 47. NJT is subject to various regulations governing railroad worker safety, including a requirement to provide redundant on-track safety protections. *Id.* ¶¶ 31–32 (citing 49 C.F.R. § 214.319(b)). NJT operates control centers at New York Penn Station, located in this District, as well as at the New Jersey Transit Meadows Maintenance Complex in Kearny, New Jersey ("Rail Operations Center" or "ROC"). *Id.* ¶ 47. NJT dispatchers at these control centers operate switches and display signals to control and monitor train movements. *Id.* The dispatchers also place and remove "blocks" that provide protection to employees working on the tracks. *Id.*

Railware asserts that NJT's centralized railroad control system (the "Accused System") includes technology that infringes on the Asserted Patents. *Id.* ¶ 35. NJT has used and currently uses a centralized train control system known as RailwayNet or AIM that was originally created

by ARINC Incorporated ("ARINC") and is now owned by Wabtec Corporation ("Wabtec"). *Id.* ¶¶ 48–51. Railware alleges that several Wabtec software and/or hardware products utilized by NJT infringe on the Asserted Patents by replicating the patented EEPS system. *Id.* ¶¶ 52–53.

## II. PROCEDURAL HISTORY

Railware initiated this patent infringement action on July 22, 2024, by filing the Complaint, Dkt. No. 1, which it amended as of right on August 6, 2024, Dkt. No. 13. On September 6, 2024, NJT moved to (i) dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based on NJT's sovereign immunity as an arm of the State of New Jersey, (ii) dismiss Railware's infringement claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and (iii) stay discovery pending disposition of NJT's motion to dismiss. Dkt. Nos. 19–20. Shortly thereafter, the Court stayed discovery on consent pending decision on the motion to dismiss, and set a briefing schedule for the motion. Dkt. No. 22. Briefing was completed on November 4, 2024, Dkt. No. 31, and the Court heard argument on the motion on January 16, 2025, which was primarily focused on the question of sovereign immunity.

On July 3, 2025, during the pendency of the motion, the United States Supreme Court granted certiorari on the question of "[w]hether [NJT] is an arm of the State of New Jersey for interstate sovereign immunity purposes." *Galette v. N.J. Transit Corp.*, No. 24-1021, 2025 WL 1829160, at *1 (U.S. July 3, 2025); *N.J. Transit Corp. v. Colt*, No. 24-1113, 2025 WL 1829162, at *1 (U.S. July 3, 2025). Because the determination of that question would necessarily bear on the threshold question of the Court's subject-matter jurisdiction, the Court entered a stay of all proceedings pending the Supreme Court's ruling. Dkt. No. 42.

Following the Supreme Court's decision in March 2026 holding that NJT is not an arm of the State of New Jersey and is thus not entitled to the benefit of state sovereign immunity, *see Galette v. N.J. Transit Corp.*, 607 U.S. 509, 515 (2026), the Court lifted the stay of the case while leaving in place the stay of discovery pending resolution of the motion to dismiss. Dkt. No. 46.

On June 11, 2026, NJT filed the present motion to transfer this case to the District of New Jersey. Dkt. Nos. 51, 51-1 ("Mot.") & 51-2 ("Piatkowski Decl."). Plaintiff filed its opposition on July 9, 2026. Dkt. Nos. 59 ("Opp.") & 59-1 ("Pirtle Decl."). After NJT filed its reply brief, Dkt. Nos. 61 ("Reply") & 61-1 ("Supp. Decl."), the Court granted Railware leave to file a sur-reply, which it filed on August 7, 2026, Dkt. No. 65 ("Sur-Reply").

## DISCUSSION

### I. LEGAL STANDARD ON A MOTION TO TRANSFER

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In patent cases, district courts "ruling on a motion to transfer pursuant to § 1404(a), should apply the law of the regional circuit" in which they sit. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed. Cir. 2011).[2]

"In considering a motion to transfer venue, the inquiry is twofold." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016). First, a court must consider whether the action could have been brought in the district the movant proposes. *See Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006); *AEC One Stop Grp.,*

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

*Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004) ("The threshold question in deciding transfer of venue . . . is whether the action could have been brought in the transferee forum."). "A case might have been brought in the proposed transferee forum if at the time the suit was brought, the defendants were subject to jurisdiction and venue was proper in that district." *Smart Skins LLC v. Microsoft Corp.*, No. 14-CV-10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015).

Second, a court considers the "convenience of parties and witnesses" and the "interest of justice" to determine whether transfer is appropriate. 28 U.S.C. § 1404(a); *see Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998). Courts in this circuit have identified the following factors as relevant to that determination: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). A court may also weigh: (8) "the forum's familiarity with the governing law," and (9) "trial efficiency and the interest of justice, based on the totality of the circumstances." *Knowles-Carter v. Feyonce, Inc.*, No. 16-CV-02532 (AJN), 2017 WL 11567528, at *9 (S.D.N.Y. Sept. 23, 2017) (quoting *Children's Network, LLC v. PixFusion, LLC*, 722 F. Supp. 2d 404, 409 (S.D.N.Y. 2010)). No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case. *See EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012); *see also Smart Skins LLC*, 2015 WL 1499843, at *4 (noting that "the relative weight of each factor depends on the particular circumstances of the case"). It is left to the court's "broad discretion" to weigh the balance of factors and consider

"notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

"[T]he party requesting transfer carries the burden of making out a strong case for transfer." *N.Y. Marine*, 599 F.3d at 114. The moving party must make a "clear and convincing showing that the balance of convenience favors" disturbing the plaintiff's choice. *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998). "The defendant moving for transfer must, in essence, demonstrate that transfer is in the best interests of the litigation." *Id.*

## II. ANALYSIS

### A. The Litigation Could Have Been Brought in the District of New Jersey

Neither party disputes that Railware could have brought this action in the District of New Jersey. *See* Mot. at 2–3. Because this case arises under federal patent law, the District of New Jersey, like this Court, has subject-matter jurisdiction. 28 U.S.C. § 1338(a); *see Smart Skins LLC*, 2015 WL 1499843, at *5. Under 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *See Rosco, Inc. v. Safety Vision LLC*, No. 19-CV-08933 (JMF), 2020 WL 5603794, at *1 (S.D.N.Y. Sept. 18, 2020). Given that NJT is incorporated in the State of New Jersey, headquartered in Newark, New Jersey, and has its ROC in Kearny, New Jersey, it is subject to personal jurisdiction in the District of New Jersey. Piatkowski Decl. ¶¶ 3–5.

The first part of the § 1404(a) analysis is satisfied.

### B. Considerations of Convenience and the Interest of Justice Favor Transfer

#### 1. Plaintiff's Choice of Forum

"A plaintiff's choice of forum generally is entitled considerable weight—particularly when the plaintiff is a resident of the forum district." *Fuji Photo Film*, 415 F. Supp. 2d at 376 (citing *Orb Factory, Ltd.*, 6 F. Supp. 2d at 210). Yet the deference given to a plaintiff's choice of forum is not absolute; the weight accorded the plaintiff's choice is lessened "when the operative facts have few meaningful connections to the plaintiff's chosen forum." *Ayala-Branch v. Tad Telecom, Inc.*, 197 F. Supp. 2d 13, 15 (S.D.N.Y. 2002).

Here, Railware's choice of forum is entitled only to minimal deference. Railware alleges that NJT's operation of the Accused System in the Southern District of New York has infringed and continues to infringe upon the Asserted Patents, *see* Compl. ¶ 14, so there exists an "obvious connection to this district." *Cf. NetSoc, LLC v. LinkedIn Corp.*, No. 18-CV-12215 (RA), 2020 WL 209864, at *5 (S.D.N.Y. Jan. 14, 2020) (concluding that a plaintiff's choice of forum was outweighed by concerns favoring transfer where plaintiff's claim "lacked any obvious connection to this district"). But the Southern District of New York is not Railware's home district, Compl. ¶ 6 (listing as Railware's principal place of business Hauppauge, New York, which is located in the Eastern District of New York); *see Hix v. Morgan Stanley & Co. LLC*, No. 15-CV-00217 (LTS) (JCF), 2015 WL 1726548, at *2 (S.D.N.Y. Apr. 15, 2015) ("[A] plaintiff's choice of forum is given less deference when it is not her home district."), and as explained further below, the operative facts in this case have only a limited connection to the Southern District of New York, *see infra* Section II.B.5. Accordingly, Railware's choice of forum weighs modestly against transfer, but the weight of this factor is minimal under the facts of this case.

**2. Convenience of the Witnesses**

The convenience of the witnesses is "generally considered the most important factor in the 1404 analysis." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009); *see also Rosen v. Ritz-Carlton Hotel Co. LLC*, No. 14-CV-01385 (RJS), 2015 WL 64736, at *3 (S.D.N.Y. Jan. 5, 2015). Generally, "the convenience of non-party witnesses is accorded more weight than that of party witnesses." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008).

In order to demonstrate that this factor favors transfer, the moving party "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Freeplay Music, LLC*, 195 F. Supp. 3d at 617. Evaluation of this factor involves consideration of "materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Id.* In a patent infringement case, "a court should give particular consideration to individuals who can testify about the technology of the allegedly infringing inventions." *Int'l Sec. Exch., LLC v. Chi. Bd. Options Exch. Inc.*, No. 06-CV-13445 (RMB) (THK), 2007 WL 1541087, at *3 (S.D.N.Y. May 24, 2007).

NJT argues transfer to the District of New Jersey is warranted in light of the "concentration of [NJT's] witnesses in the District of New Jersey and the apparent absence of [Railware's] witnesses located in [the Southern District of New York]." Mot. at 5. The key witnesses NJT identifies are NJT's dispatchers and rail workers who coordinate the placement and removal of track blocks using the Accused System. NJT asserts that "*all* of [its] Dispatchers who place and remove blocks using the Accused System work out of [NJT's] ROC in Kearny, New Jersey," and "the entirety of the team responsible for [NJT's] operation and implementation of the Accused System work at [NJT's] ROC in Kearny." *Id.* at 4 (emphasis in original). NJT

further avers that while it does have routes that terminate in or transit through this District,[3] it does not "maintain[] or dispatch track" in this District, because those sections of track are owned by other railroads including Amtrak and the Long Island Rail Road ("LIRR"). *Id.* Thus, none of the NJT conduct that might be relevant to the Asserted Patents (placing or removing blocks on tracks) takes place in this District. Finally, NJT claims that the Amended Complaint does not identify any witnesses who reside in this District, likely because Railware's principal place of business lies in the Eastern District of New York, and Mr. Pirtle, the inventor of the patents-in-suit, appears to reside in Ronkonkoma, New York, also in the Eastern District of New York. *Id.* at 5.

Railware, on the other hand, argues that the Southern District of New York is more convenient for its witnesses, because the "District of New Jersey is inconvenient to travel to from Hauppauge, New York, when compared to this District." Opp. at 6; *see also* Pirtle Decl. ¶ 9. Railware also contends the Southern District of New York is at least equally convenient for NJT's witnesses who are based in Kearny, because the ROC in Kearny is purportedly closer, as a matter of linear distance, to the Thurgood Marshall Courthouse in this District than to the Martin Luther King Building & U.S. Courthouse in Newark, New Jersey. Opp. at 7. Railware also states that it intends to call employees from Metro-North, Amtrak, and the LIRR as third-party witnesses, which entities are all located in this District. *Id.* at 6–7.

The Court agrees with NJT that its dispatchers and rail workers who coordinate the placement and removal of track blocks using the Accused System, as well as the members of its

---

[3] *See* NJT Rail System Map, https://content.njtransit.com/sites/default/files/maps/RSM_Geographic_051426.pdf (last visited Sept. 16, 2026) (depicting a number of lines that have a single stop in Manhattan, at their terminus in New York Penn Station; the Pascack Valley Line, which has three stops in Rockland County, including its northern terminus in Spring Valley, NY; and the Port Jervis-Suffern Line, which has nine stops in Rockland and Orange Counties, including its northern terminus in Port Jervis, NY).

Track Maintenance and Control Platform ("TMAC") team responsible for the operation and implementation of the Accused System, are highly relevant witnesses, as they can speak best to "the technology of the inventions claimed in the patents-in-suit." *Fuji Photo Film*, 415 F. Supp. 2d at 373. The witnesses' employment and physical place of work in the District of New Jersey is thus particularly significant in this analysis..[4] *See Int'l Sec. Exch., LLC*, 2007 WL 1541087, at *3 ("In the context of a patent infringement suit, a court should give particular consideration to individuals who can testify about the technology of the allegedly infringing inventions."); *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 437 (E.D.N.Y. 2012) ("In an infringement action, the most critical witnesses may be those officers and employees who were involved in the design, production, and sale of the allegedly infringing products.").

Mr. Pirtle is the inventor of the Asserted Patents who would undoubtedly provide material testimony about the Asserted Patents and Railware's EEPS technology. However, Mr.

---

[4] After Railware argued in its opposition that NJT "did not identify the names of any witnesses who will be allegedly inconvenienced by litigation in this District and will not be able to attend trial, nor describe their specific testimony," Opp. at 8, NJT filed a supplemental declaration with its reply brief, naming the specific employees of the TMAC team responsible for the technical development and implementation of the Accused System, and specific employees and company officials who would likely attend trial. Supp. Decl. ¶¶ 3–4; *see also* Reply at 3–4. The Court finds that NJT has satisfied its requirement to specify the names and roles of probable key witnesses. *See Savoy Owners Assocs., Inc. v. Ins. Corp. of N.Y.*, No. 02-CV-06145 (JFK), 2003 WL 941098, at *2 (S.D.N.Y. Mar. 6, 2003); *see also Caldwell v. Slip-N-Slide Records, Inc.*, No. 10-CV-09106, 2011 WL 3251502, at *3 (S.D.N.Y. July 26, 2011) (movant "bears the burden of identifying any and all potential witnesses who would [be] inconvenienced if the suit were to remain in the forum chosen by plaintiff"). Although NJT did not detail the full expected substance of its witnesses' testimony in its affidavit, the Court finds that NJT's briefs and accompanying declarations contain sufficient information to make clear the testimony they would offer at trial, at least for the factors relevant to this motion. *See, e.g.*, Reply at 4 ("[P]ersons from [the TMAC] team can provide relevant testimony as to how the Accused System functions. That testimony goes to the heart of the dispute, which involves whether the Accused System functions in a manner that infringes Railware's patents."); Piatkowski Decl. ¶ 6 (NJT's dispatchers place and remove "the rail blocks that are implemented in the [Accused System]" from the ROC in New Jersey); *id.* ¶ 13 (listing documents concerning NJT's "dispatching operations, rail-block procedures, ROC operations, dispatcher training, train movement protocols, system configuration, internal communications concerning the accused functionality, and technical documents concerning the systems used to place, remove, or manage rail blocks" as well as "contracts, procurement records, technical specifications, statements of work, and vendor communications").

Pirtle's declaration merely offers a conclusory statement that the Southern District of New York is more convenient than the District of New Jersey, without providing a reason other than his bare say-so. The "Manhattan and Newark courthouses of the Southern District of New York and the District of New Jersey respectively are only 13 miles away from each other," *Kumar v. Opera Sols. OPCO, LLC*, No. 20-CV-06824 (GHW), 2021 WL 4442832, at *15 (S.D.N.Y. Sept. 28, 2021), and Mr. Pirtle fails to persuade the Court that he would be significantly inconvenienced by having to testify at a trial in the District of New Jersey as opposed to this District..[5]

Railware states its intention to rely on third-party witnesses from Metro-North, Amtrak, and the LIRR, which are all located in this District, Opp. at 6–7, and argues that this factor weighs against transfer because the convenience of non-party witnesses is accorded more weight than that of party witnesses. *See Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366 (S.D.N.Y. 2009). Though it is true that the Southern District of New York is a theoretically more convenient forum for these entities, Railware does not identify the particular witnesses it might call and it is thus unclear where any particular witness lives or works..[6] In addition, the Court once again notes that the Manhattan and Newark federal courthouses are separated by a

[5] The Court could also take judicial notice of certain well-known facts to anyone who lives or works in the New York City metropolitan area, such as the limited relevance of linear distances as compared to factors that are far more significant to a convenience analysis, such as travel time, relative ease of driving and parking versus taking public transit from one location to one of two other locations, etc. None of these matters are addressed by the Pirtle declaration or other Railware submissions in opposition to the motion.

[6] For example, Amtrak also has significant operations in New Jersey, and its corporate headquarters (where lawyers and technical employees responsible for Amtrak's intellectual property are likely to be located) is in Washington, D.C. The Court does not rely on these facts in deciding the motion, but rather points them out as examples of the gaps and unanswered questions in Railware's opposition to the motion.

mere 13 miles, and Railware musters no evidence that these third parties would be significantly inconvenienced by having to testify in the District of New Jersey.

In light of NJT's particularized showing that important witnesses—including dispatchers, rail workers, and employees who are most knowledgeable about the Accused System—are all based in New Jersey, this factor weighs in favor of transfer.

### 3. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Transfer is appropriate when it would facilitate access to relevant documents. *See In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995). "In an era of electronic documents, easy copying and overnight shipping," this factor is less important. *ESPN, Inc.*, 581 F. Supp. 2d at 548. "However, in infringement cases, it makes sense that the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weigh in favor of transfer to that location." *Id.* at 548–49. This factor "should be considered to the extent that it bears on the convenience calculus." *Samson Lift Techs. v. Jerr-Dan Corp.*, No. 09-CV-02493 (RJH), 2009 WL 2432675, at *3 (S.D.N.Y. Aug. 7, 2009).

NJT claims that all of its documents relating to the Accused System including those concerning NJT's "dispatching operations, rail-block procedures, ROC operations, . . . internal communications concerning the accused functionality, and technical documents concerning the systems used to place, remove, or manage rail blocks" are located in and maintained by NJT personnel in New Jersey. Piatkowski Decl. ¶ 13. NJT argues that the concentration of documents in New Jersey, combined with the "complete lack" of documents in this District, favors transfer. Mot. at 6. Railware, on the other hand, argues that electronic discovery has reduced the burden of producing documents not located in this District, rendering this factor neutral. Opp. at 9.

While both parties anticipate electronic document production, the Court must take into account the fact that the greater bulk of the sources of proof remain more readily accessible in the District of New Jersey. *See In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020). This factor, therefore, weighs only slightly in favor of transfer.

**4. Convenience of the Parties**

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *DiPizio v. Empire State Dev. Corp.*, No. 15-CV-05339 (GHW), 2015 WL 5824704, at *6 (S.D.N.Y. Oct. 5, 2015).

NJT would find it more convenient to litigate this matter in the District of New Jersey, where it is based and where the most knowledgeable company officials and employees are located. Mot. at 5–6; *see also* Piatkowski Decl. ¶¶ 8, 14–15. Railware would find it more convenient to litigate in the Southern District of New York given its "substantial business activities in this District, its proximity to this District, and its two-year litigation against Amtrak in this District." Opp. at 6; *see also* Pirtle Decl. ¶¶ 9–11.

Because transfer of this matter may serve merely to shift the burden from one party to the other, this factor is neutral. *See Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) ("The parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party.").

**5. Locus of Operative Facts**

The locus of operative facts is one of the most important factors in a court's analysis of a transfer motion. *See Lighting World, Inc. v. Birchwood Lighting, Inc.*, No. 01-CV-04751 (BSJ), 2001 WL 1242277, at *3 (S.D.N.Y. Oct. 16, 2001); *WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc.*, No. 00-CV-06558 (RCC), 2001 WL 1246592, at *4 (S.D.N.Y. Oct. 18,

2001) ("The location of the operative events is a 'primary factor' in a transfer motion." (quoting *ZPC 2000, Inc. v. SCA Grp., Inc.*, 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000))). Therefore, "[t]he locus of operative facts will substantially favor transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York." *NetSoc, LLC*, 2020 WL 209864, at *4.

NJT argues that the locus of operative facts is New Jersey, because (i) all of NJT's dispatchers who place and remove blocks using the Accused System operate out of its ROC in Kearny, New Jersey; (ii) the overwhelming majority of NJT's track workers who coordinate with NJT dispatchers to place and remove blocks are located in New Jersey; (iii) the entirety of the team responsible for NJT's acquisition, implementation, and operation of the Accused System work in New Jersey; (iv) NJT's decision to implement the Accused System was made in New Jersey (and the employees responsible for that decision are located there); and (v) the alleged notice Railware claims to have provided NJT regarding the Asserted Patents was sent to a NJT employee in New Jersey. Piatkowski Decl. ¶¶ 6–9.

The locus of operative facts rests in the "site of the events from which the claim arises." *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08-CV-08106 (PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009). For an infringement claim, the "center of gravity" is the "district where the alleged infringement occurred." *Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615, 618 (S.D.N.Y. 1995). Railware's claims are premised on the Accused System's purported infringement of Railware's patented technology for blocking and unblocking sections of track, Compl. ¶ 35, which is accomplished by NJT dispatchers operating out of NJT's ROC in New Jersey, Piatkowski Decl. ¶ 6. Thus, the locus of operative facts is clearly New Jersey. *See* Piatkowski Decl. ¶¶ 6–9.

Railware's arguments to the contrary are unavailing. First, Railware claims that it first learned of NJT's alleged infringement when Metro-North informed Railware that NJT had "copied Railware's Centralized Train Control ('CTC') system with Enhanced Employee Protection System." Opp. at 9–10. But Railware offers no allegation or evidence that it first learned this information in this District nor does Railware explain why that fact is "operative."[7] Second, Railware argues that NJT's operations are "heavily focused on this District," with its business "centered on transporting passengers into and out of New York City." Opp. at 10–11 (citing NJT ridership statistics at various stations including New York Penn Station). That is beside the point. First, one could just as easily say that NJT's business is "centered on delivering its customers safely home to New Jersey." But second, and more importantly, the Asserted Patents have nothing to do with how many passengers NJT delivers to Penn Station; they relate to technology for blocking and unblocking sections of track, which is accomplished exclusively at the ROC in New Jersey. Piatkowski Decl. ¶¶ 7–8.

Accordingly, this factor weighs strongly in favor of transfer to the District of New Jersey.

#### 6. Availability of Process to Compel the Attendance of Unwilling Witnesses

Next, the Court considers the relative limitations on its power to compel the attendance of witnesses. "This factor is generally relevant only with respect to third-party witnesses, because employee witness[es] are subject to compulsory process in either forum by virtue of their employment relationship with a party." *Pecorino*, 934 F. Supp. 2d at 442.

---

[7] Even the relevance of this information is unclear. If Mr. Pirtle happened to be on vacation in Florida when he received a phone call telling him that NJT was infringing Railware's patent, his location when receiving that information would likely be of no relevance at all, much less be an operative fact for a transfer analysis.

NJT contends that the potential third-party witnesses apparent from the Amended Complaint, including Wabtec Corporation and its corporate predecessors, fall outside of the subpoena power of both this District and the District of New Jersey. Mot. at 8–9. Railware agrees but contends that this factor weighs against transfer because there are additional third-party witnesses Railware intends to call from Metro-North, Amtrak, and the LIRR which are all located in this District. Opp. at 11.

Here, this factor is neutral because it appears that the third-party witnesses Railware identifies are within the subpoena power of the District of New Jersey. Under Federal Rule of Civil Procedure 45(c)(1), a subpoena may command a person to attend an out-of-state trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). The United States District Court for the District of New Jersey sits at the Martin Luther King Building & U.S. Courthouse, located at 50 Walnut Street in Newark. The Court takes judicial notice that the straight-line distance from there to New York Penn Station is 9.52 miles, the distance to Grand Central Terminal is 10.39 miles, the distance to Metro-North's headquarters at 420 Lexington Avenue in Manhattan is 10.46 miles, and the distance to the LIRR's headquarters at 93-02 Sutphin Boulevard in Jamaica is 19.22 miles. All distances fall well within the 100-mile limit of Rule 45.

Therefore, this factor is neutral.

**7. Relative Means of the Parties**

NJT is a large public agency and is undoubtedly able to litigate a case in this District without suffering meaningful hardship. NJT employs more than 12,000 employees, had an operating budget of $3.16 billion for fiscal year 2026, and had total assets over $10.7 billion for fiscal year 2025. *See* Dkt. Nos. 59-11, 59-12 & 51-7 at 6. Moreover, NJT has litigated several lawsuits in this District in the past, including an action for patent infringement. *See, e.g.*,

*Bytemark, Inc. v. Xerox Corp.*, No. 17-CV-01803 (PGG), 2022 WL 94859 (S.D.N.Y. Jan. 10, 2022).

Railware, on the other hand, "has 3 employees and an annual operating budget that is less than 0.3% of [NJT's] 2026 fiscal year operating budget." Pirtle Decl. ¶ 10. Railware argues this disparity in means weighs heavily against transfer. Opp. at 12. But Railware has not explained the specific harm or severity of the financial repercussions it would suffer if forced to litigate this case in the District of New Jersey. *See Orb Factory, Ltd.*, 6 F. Supp. 2d at 210 ("[W]here proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered."); *see also Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998) (the parties' relative means "is not entitled to great weight where plaintiff and defendant are both corporations").

Accordingly, this factor is neutral under the facts of this case.

#### 8. The Forum's Familiarity with Governing Law

"Federal law governs the dispute between the parties in this case because it relates to allegations of patent infringement. Since patent law is federal law, any district court may handle a patent case with equal skill." *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 439 (S.D.N.Y. 2000); *see also Fuji Photo Film*, 415 F. Supp. 2d at 376.

Railware argues this District's familiarity with the Asserted Patents weighs against transfer because Railware prosecuted a patent infringement action in the Southern District of New York against Amtrak involving the same patents. *See Railware, Inc. v. Nat'l R.R. Passenger Corp.*, No. 22-CV-05013 (KPF), 2023 WL 5432860, at *13 (S.D.N.Y. Aug. 23, 2023) (denying Amtrak's Rule 12(b)(6) motion to dismiss). That argument fails for the simple reason that a different judge of this District presided over that case, and the undersigned has no more or less familiarity with the patents at issue than any judge in the District of New Jersey.

Thus, this factor is neutral.

**9. Trial Efficiency and the Interests of Justice**

The Court's "consideration of whether transfer is in the interest of justice is based on the totality of the circumstances, and relates primarily to issues of judicial economy." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005).

NJT argues that the public interest in local adjudication of local controversies means a New Jersey jury would have a greater interest in hearing this dispute, and transfer would not result in judicial inefficiency because discovery has not commenced. Mot. at 12. NJT also states in its reply brief that it has commenced an action in the District of New Jersey against Wabtec for indemnification (the "Wabtec Action") and intends to consolidate this case with the Wabtec Action for purposes of discovery and trial, furthering judicial efficiency. Reply at 9–10.

Railware contends that considerations of judicial economy counsel against transfer because this action has been pending in this District for over two years "after a two-year litigation in this District against Amtrak involving the same Asserted Patents and the same infringing technology." Opp. at 13. Railware also argues that the public interest in local adjudication of local controversies favors this District because of "Railware's location in New York," "its significant business in this District," and NJT's "meaningful connections to and infringing acts in this District." *Id.* Railware further argues that the interest of justice militates against transfer, because NJT never objected to the Southern District of New York as a venue when it filed its motion to dismiss in September 2024. *Id.* Railware characterizes the Wabtec Action as NJT's "latest delay tactic" that does not tip the scales in favor of transfer. *Id.* at 14.

The Court finds this final factor weighs in favor of transfer. When a case is in its earliest stages, it is generally not inefficient to transfer the case. *See, e.g.*, *Frame v. Whole Foods Mkt., Inc.*, No. 06-CV-07058 (DAB), 2007 WL 2815613, at *7 (S.D.N.Y. Sept. 24, 2007) ("Since the

case is at its earliest stages, there would be little loss in judicial economy by transferring the case."). Notwithstanding that Railware commenced this action in July 2024, the case is still in its early stages. Largely because of factors related to the sovereign immunity question (which took precedence because it determined whether the Court had subject matter jurisdiction), *see, e.g.*, Dkt. Nos. 42–43, the balance of the motion to dismiss has not been decided, and discovery has yet to begin. While Railware correctly observes that NJT could have moved for transfer to the District of New Jersey when it filed its motion to dismiss nearly two years ago, *see* Opp. at 13, it does not follow that the motion is an improper attempt to delay adjudication of Railware's claims. Railware has made "no showing" that NJT's delay in filing this motion "was intended as a dilatory tactic or that [Railware] would be prejudiced by such passage of time." *Crane v. Metro-N. Commuter R.R.*, No. 87-CV-02876 (MJL), 1989 WL 74954, at *2 (S.D.N.Y. June 26, 1989); *see also U.S. Fid. & Guar. Co. v. Republic Drug Co.*, 800 F. Supp. 1076, 1083 (E.D.N.Y. 1992) ("[Plaintiff] has failed to set forth any reasons why it would suffer prejudice if this case was to be transferred at this time."). As to Railware's other arguments, the pendency of the litigation against Amtrak here is of no significance at all because a different judge is assigned that case and Railware has not explained how the existence of that case would promote or detract from efficiency regardless of whether the case against NJT is handled by a judge in this District or in the District of New Jersey. Likewise, as explained elsewhere, Railware might be located in New York State but not in this District, and NJT's alleged infringing acts did not take place here either.

Transfer to the District of New Jersey would promote judicial economy because consolidation of this action with the Wabtec Action would "advance the strong policy interests of achieving efficient pretrial discovery, avoiding duplicative litigation, and avoiding inconsistent

results." *Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 424 (S.D.N.Y. 2012); *see also Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968). The present case and the Wabtec Action are clearly related because they share common questions of fact relating to the development and functionality of the Accused System, and will likely involve many of the same witnesses and evidence. *WMC Mortg. LLC*, 880 F. Supp. 2d at 424 (granting motion to transfer where related case involved "significant overlap of parties, facts, and issues"). Transfer and consolidation would thus achieve efficient pretrial discovery and prevent inconsistent adjudications. *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 747 (S.D.N.Y. 2013).

This final factor weighs in favor of transfer to the District of New Jersey.

**C. Balancing the Factors**

The convenience of the parties, the ability to compel third-party witness testimony, the relative means of the parties, and the forum's familiarity with the law are all neutral factors under the circumstances of this case. Railware's choice of forum weighs in favor of denying NJT's motion to transfer. However, the convenience of the witnesses and the locus of operative facts—two factors that merit significant weight—as well as the location of relevant documents and considerations of trial efficiency and the interest of justice, all weigh in favor of transferring this matter to the District of New Jersey. *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (holding that, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer"). Accordingly, taking all of the relevant considerations into account, there is "clear and convincing" evidence that the balance of factors shows that transfer is appropriate and outweighs Railware's interest in litigating in this District. *See Orb Factory, Ltd.*, 6 F. Supp. 2d at 208.

## CONCLUSION

For all of the reasons discussed above, the motion to transfer this action to the District of New Jersey is GRANTED. The Clerk of Court is respectfully directed to transfer this case to the District of New Jersey.

Dated: September 21, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge